**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSSETS**

| | | |
|---|---|---|
| **JEANNETTE AKERS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NUMBER:** |
| | ) | |
| **BAYER HEALTHCARE** | ) | _____ |
| **PHARMACEUTICALS, INC.,** | ) | |
| **BAYER PHARMA AG, and BAYER** | ) | |
| **OY** | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| **Defendants.** | ) | |

## COMPLAINT

COMES NOW, Plaintiff Jeannette Akers, by and through the undersigned counsel, hereby allege against Bayer Healthcare Pharmaceuticals, Inc., Bayer Oy and Bayer Pharma AG the following:

**I.      PARTIES**

1.      At all relevant times hereto, Plaintiff Jeannette Akers was a citizen and resident of Suffolk County, Massachusetts and used Defendants' intrauterine contraceptive system, Mirena®.

2.      Upon information and belief, Defendant Bayer Healthcare Pharmaceuticals Inc., is, and at  all times relevant was, a corporation organized and existing under the laws of the State of Delaware, having a principal place of business at 340 Changebridge Road, P.O. Box 1000, Montville, New Jersey 07045-1000.  Pursuant to MDL Order, dated July 17, 2013, Document 225, this Defendant may be served with process, via **certified mail**, upon the following representative:

1

**SOP Department**
**Corporation Service Company**
**Suite 400**
**2711 Centerville Road**
**Wilmington, DE 19808**

3.      Defendant, Bayer Oy may be served with process via **registered mail**, no less than seven (7) calendar days after mailing of service upon Bayer Healthcare Pharmaceuticals, Inc., at:

**Bayer Oy**
**Legal Department**
**Pansiontie 47 / P.O. Box 415**
**20101 TUKRKU**
**FINLAND**

4.      Defendant, Bayer Pharma AG may be served with process via **registered mail**, no less than (7) calendar days after mailing of service upon Bayer Healthcare Pharmaceuticals, Inc., at:

**Bayer Pharma AG**
**Attn: Eva Gardyan-Eisenlohr**
**General Counsel**
**Muellerstrasse 178**
**13353 Berlin**
**GERMANY**

5.      Defendants transacted and conducted business in the State of New Jersey and Massachusetts, the state of Plaintiff's residence, and have derived substantial revenue from interstate commerce.

6.      Upon information and belief, at all relevant times, Defendants expected or should have expected that its acts would have consequences within the United States of America, particularly Massachusetts, and derived substantial revenue from interstate commerce.

7.      Upon information and belief, Defendants were in the business of designing, researching, manufacturing, testing, advertising, promoting, marketing, selling, and distributing Mirena®, into interstate commerce throughout the United States, either directly or indirectly through third parties, subsidiaries or related entities, as an intrauterine contraceptive device or system.

8.      Defendant, Bayer Healthcare Pharmaceuticals, Inc., admits that on April 4, 2007, as part of a corporate acquisition, the name of Berlex, Inc. was changed to Bayer Healthcare Pharmaceuticals, Inc.

9.      Defendant, Bayer Healthcare Pharmaceuticals Inc., admits that, at certain times, it designed, developed, marketed, distributed, advertised, promoted, and/or sold Mirena® in the United States.

10.     Defendant Bayer Healthcare Pharmaceuticals, Inc. is the holder of the approved New Drug Application ("NDA") for the contraceptive device Mirena®.

11.     Defendant, Bayer Oy, admits that it designed, developed, researched, manufactured, and tested all Mirena® sold by Bayer Healthcare Pharmaceuticals, Inc. in the United States.

12.     Defendant, Bayer Oy, admits that it sold Mirena® directly to Bayer Healthcare Pharmaceuticals, Inc. until September 1, 2008.  After September 1, 2008, Bayer Oy sold Mirena® to Bayer Pharma AG, which resold the product to Bayer Healthcare Pharmaceuticals, Inc.

13.     Defendant, Bayer Pharma AG admits that it designed, developed, and researched all Mirena® sold by Bayer Healthcare Pharmaceuticals, Inc. in the United States exclusively from Bayer Oy and resold the product to Bayer Healthcare Pharmaceuticals, Inc.

14.     Defendant, Bayer Healthcare Pharmaceuticals, Inc., admits that prior to September 1, 2008, it and its predecessors purchased all Mirena® sold in the United States from Bayer Oy and its predecessors.  After September 1, 2008, Bayer Healthcare Pharmaceuticals, Inc. purchased all Mirena® sold in the United States from Bayer Pharma AG, which purchased the product from Bayer Oy.

15.     At all times alleged herein, "Defendants" includes and included any and all parents, subsidiaries, affiliates, divisions, franchises, partners, joint venturers, and organizational units of any kind, their predecessors, successors, and assigns and their officers, directors, employees, agents, representatives and any and all other persons acting on their behalf.

## II.     JURISDICTION

16.     Jurisdiction is conferred on this Court by the provisions of 28 U.S.C. § 1332(a), et seq., by virtue of diversity of citizenship where the matter in controversy, exclusive of interest and cost, exceeds $75,000.00.

## III.    FACTS

17.     Plaintiff incorporates by reference all other paragraphs of this complaint as if fully set forth herein, and further allege as follows:

18.     Mirena® is an intrauterine contraceptive system made of flexible plastic that is inserted by a healthcare provider during an office visit.  Mirena® is a T-shaped polyethylene frame with a steroid reservoir that releases levonorgestrel, a prescription medication used as a contraceptive.

19.     The federal Food and Drug Administration ("FDA") approved Defendants' New Drug Application for Mirena® in December 2000.  Today, more than 2 million women in the

United States use Mirena®.  It has been used by more than 15 million women worldwide.

20.     The system releases levonorgestrel, a synthetic progestogen, directly into the uterus for birth control.  Defendants admit "[i]t is not known exactly how Mirena® works," but provide that Mirena® may thicken cervical mucus, thin the uterine lining, inhibit sperm movement and reduce sperm survival to prevent pregnancy.

21.     The Mirena® intrauterine system (IUS) is designed to be placed within seven (7) days of the first day of menstruation and approved to remain in the uterus for up to five years.  If continued used is desired after five years, the old system must be discarded and a new one inserted.

22.     The package labeling recommends that Mirena® be used in women who have had at least one child.

23.     The Mirena® label does not warn about spontaneous migration of the IUS, but only states that migration may occur if the uterus is perforated during insertion.

24.     The Mirena® label also describes perforation as an "uncommon" event, despite the numerous women who have suffered migration and perforation post-insertion, clearly demonstrating this assertion to be false.

25.     Defendants have a history of overstating the efficacy of Mirena® while understating the potential safety concerns.

26.     In or around December 2009, Defendants were contacted by the Department of Health and Human Services' Division of Drug Marketing, Advertising, and Communications ("DDMAC") regarding a consumer-directed program entitled "Mirena Simple Style Statements Program," a live presentation designed for "busy moms."  The Simple Style program was presented in a consumer's home or other private setting by a representative from "Mom Central",

a social networking internet site, and Ms. Barb Dehn, a nurse practitioner, in partnership with Defendants.

27.     This Simple Style program represented that Mirena® use would increase the level of intimacy, romance and emotional satisfaction between sexual partners.  DDMAC determined these claims were unsubstantiated and, in fact, pointed out that Mirena®'s package insert states that at least 5% of clinical trial patients reported a decreased libido after use.

28.     The Simple Style program script also intimated that Mirena® use can help patients "look and feel great."  Again, DDMAC noted these claims were unsubstantiated and that Mirena® can cause a number of side effects, including weight gain, acne, and breast pain or tenderness.

29.     The portion of the Simple Style script regarding risks omitted information about serious conditions, including susceptibility to infections and the possibility of miscarriage in a woman who becomes pregnant on Mirena®.

30.     Finally, Defendants falsely claimed that its program required no compliance with a monthly routine.

31.     The Defendants' concealment of known defects from the FDA, Plaintiff, and the medical community constitutes fraudulent concealment that equitably tolls applicable statutes of limitation.

32.     Plaintiff was not aware of, and could not in the exercise of reasonable care have discovered, the existence of the defect in the Mirena® IUS, without considerable television and internet information disclosed by third parties.

33.     Defendants are estopped from relying on the statute of limitations defense because Defendants concealed the increased risk of embedment and perforation with ordinary

and intended use, leading to major surgery for the removal of the IUS.  Instead of disclosing the risks, Defendants continue to represent its product as safe for its intended use, and has kept it on the market without change in the labeling and warnings.

34.     Plaintiff Jeannette Akers had the Mirena® IUS inserted on December 19, 2011 at Brookside Community Health Center in Jamaica Plains, Massachusetts.  The Mirena® IUS insertion was uncomplicated and was properly placed.

35.     On March 19, 2012, Plaintiff Jeannette Akers went in to have an ultrasound at the request of Dr. Mary Schilling to monitor bilateral ovarian cysts.  The ultrasound performed on this date showed the Mirena® IUS to be located in the lower uterine segment with the arms possibly extending into the myometrium.

36.     On March 19, 2012, Dr. Mary Schilling attempted to remove the Mirena® IUS in her office with no success.  Dr. March Schilling immediately scheduled Plaintiff Jeannette Akers for surgery to locate and remove the Mirena® IUS.

37.     On March 20, 2012 Plaintiff Jeannette Akers was required to undergo surgical removal of the Mirena® IUS by Dr. Mary Schilling at Brigham & Women's Faulkner Hospital in Boston, Massachusetts.

## IV.     COUNTS

### COUNT I
### NEGLIGENT MANUFACTURING

38.     Plaintiff incorporates by reference all other paragraphs of this complaint as if fully set forth, and further alleges as follows:

39.     Defendants were engaged in the business of manufacturing Mirena® in the State of Massachusetts.

40.     The Mirena® was negligently manufactured by Defendants in that when it left the

hands of Defendants, the Mirena® deviated from product specifications, applicable federal requirements, and industry standards for these medical devices, rendering the product unreasonably dangerous.

41.     Defendants introduced a product into the stream of commerce which is dangerous and unsafe in that the harm of Mirena® outweighs any benefit derived therefrom.   The unreasonably dangerous nature of Mirena® was the proximate cause of serious harm to Plaintiff JEANNETTE AKERS.

42.     A reasonable manufacturer would or should have known of the manufacturing defects and that the risks created the defects are unreasonably greater than that of other contraceptives and that Mirena® has no clinical benefit over such other contraceptives that compensates in whole or part for the increased risk.

43.     As a direct and proximate result of Plaintiff JEANNETTE AKERS'S use of Mirena®, she was forced to undergo surgical removal of the embedded Mirena® IUS, developed severe pain from the device, and had to undergo numerous procedures.

44.     Defendants knew and, in fact, advertised and promoted the use of Mirena® despite its failure to test or otherwise determine the safety and efficacy of such use.   As a direct and proximate result of the Defendants' negligence, physicians began commonly prescribing this product as safe and effective.

45.     As a direct and proximate result of one or more of these wrongful acts or omissions of Defendants, Plaintiff JEANNETTE AKERS suffered profound injuries, required and continues to require medical treatment, and incurred and continues to incur medical and hospital expenses.

WHEREFORE, Plaintiff demands judgment against Defendants for compensatory

damages, together with interest, costs of suit, attorney's fees and all such other relief as the Court deems appropriate pursuant to the common law and statutory law.

## COUNT II
## NEGLIGENT DESIGN

46.     Plaintiff incorporates by reference all other paragraphs of this complaint as if fully set forth, and further alleges as follows:

47.     The Mirena® manufactured, designed, formulated, tested, created, made, constructed, assembled, marketed, advertised, distributed and sold by Defendants was defective in design or formulation in that Defendants knew or should have known that the product design made the foreseeable risks of the product exceed the benefits, and it was more dangerous than an ordinary consumer would expect.

48.     Defendants negligently failed or improperly weighed the likelihood of danger posed by this design against the feasibility, cost, and adverse consequences of an alternative design.

49.     As a direct and proximate cause of Plaintiff's use of Mirena®, she was forced to undergo surgical removal of the Mirena® IUS.

50.     Defendants knew or should have known that physicians and other healthcare providers began commonly prescribing this product as a safe and effective contraceptive despite its lack of efficacy and potential for serious permanent side effects.

51.     There are contraceptives on the market with safer alternative designs in that they provide equal or greater efficacy and far less risk.

52.     As a direct and proximate result of one or more of these wrongful acts or omissions of Defendants, Plaintiff JEANNETTE AKERS suffered profound injuries, required and continues to require medical treatment, and incurred and continues to incur medical and

hospital expenses.

WHEREFORE, Plaintiff demands judgment against Defendants for compensatory damages, together with interest, costs of suit, attorney's fees and all such other relief as the Court deems appropriate pursuant to the common law and statutory law.

## COUNT III
## NEGLIGENT FAILURE TO WARN

53.     Plaintiff incorporates by reference all other paragraphs of this complaint as if fully set forth, and further alleges as follows:

54.     The Defendants' labeling failed to adequately warn consumers and prescribers of, among other things, the risk of embedment and migration of the Mirena® post-insertion, uterine perforation post-insertion, surgical removal, or the possibility that device complications such as migration and perforation may cause abscesses, infections, require surgery for removal and/or may necessitate hysterectomy, oophorectomy, and other complications.

55.     Defendants manufactured, designed, formulated, tested, packaged, labeled, produced, created, made, constructed, assembled, marketed, advertised, distributed, sold and otherwise released into the stream of commerce the pharmaceutical, Mirena®, and in the course of the same, directly advertised or marketed the product to consumers or persons responsible for consumers, and therefore had a duty to warn of the risks associated with the use of Mirena®.

56.     Mirena® was under the exclusive control of Defendants and Defendants knew or should have known that the Mirena® was unaccompanied by appropriate warnings regarding all of the risks associated with its use.  The warnings given did not accurately reflect the risk, incidence, symptoms, scope or severity of such injuries to the consumer or physicians.  The promotional activities of Defendants further diluted or minimized the warnings given with the product.

57.     Defendants downplayed the serious and dangerous side effects of Mirena® to encourage sales of the product; consequently, Defendants placed their profits above customer safety.

58.     Mirena® was defective and unreasonably dangerous when it left the possession of Defendants in that it contained warnings insufficient to alert the Plaintiff to the dangerous risks and reactions associated with it.  Even though Defendants knew or should have known of the risks associated with Mirena®, they still failed to provide warnings that accurately reflected the signs, symptoms, incident, scope, or severity of the risks associated with the product. Defendants knew and, in fact, advertised and promoted the use of Mirena® despite its failure to test or otherwise determine the safety and efficacy of such use.  As a direct and proximate result of the Defendants' advertising and widespread promotional activity, physicians began commonly prescribing this product as safe and effective.

59.     Plaintiff JEANNETTE AKERS could not have discovered any defect in Mirena® through the exercise of reasonable care.

60.     Defendants, as manufacturers of pharmaceutical drugs, are held to the level of knowledge of an expert in the field and, further, Defendants had knowledge of the dangerous risks and side effects of Mirena®.

61.     Plaintiff JEANNETTE AKERS did not have the same knowledge as Defendants and no adequate warning was communicated to her physician(s).

62.     Defendants had a continuing duty to warn consumers, including Plaintiff JEANNETTE AKERS and her physicians, and the medical community of the dangers associated with Mirena® and by negligently and/or wantonly failing to adequately warn of the dangers

associated with its use, Defendants breached their duty.

63.     As a direct and proximate result of one or more of these wrongful acts or omissions of Defendants, Plaintiff JEANNETTE AKERS suffered profound injuries, required and continues to require medical treatment, and incurred and continues to incur medical and hospital expenses.

WHEREFORE, Plaintiff demands judgment against Defendants for compensatory damages, together with interest, costs of suit, attorney's fees and all such other relief as the Court deems appropriate pursuant to the common law and statutory law.

## COUNT IV
## NEGLIGENCE

64.     Plaintiff incorporates by reference all other paragraphs of this complaint as if fully set forth, and further alleges as follows:

65.     Upon information and belief, Defendants failed to use reasonable care in designing Mirena® in that they:

    a.  failed to properly and thoroughly test Mirena® before releasing the drug to market;
    b.  failed to properly and thoroughly analyze the data resulting from the premarketing tests of Mirena®;
    c.  failed to conduct sufficient post-market testing and surveillance of Mirena®;

66.     A reasonable manufacturer would or should have known that the risks created by Mirena® are unreasonably greater than that of other contraceptives and that Mirena® has no clinical benefit over such other contraceptives that compensates in whole or part for the increased risk.

67.     As a direct and proximate result of one or more of these wrongful acts or omissions of Defendants, Plaintiff JEANNETTE AKERS suffered profound injuries, required and continues to require medical treatment, and incurred and continues to incur medical and

hospital expenses.

WHEREFORE, Plaintiff demands judgment against Defendants for compensatory damages, together with interest, costs of suit, attorney's fees and all such other relief as the Court deems appropriate pursuant to the common law and statutory law.

### COUNT V
### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

68.     Plaintiff incorporates by reference all other paragraphs of this complaint as if fully set forth, and further alleges as follows:

69.     Defendants manufactured, promoted, distributed and sold Mirena® as safe for use by the public at large, including Plaintiff JEANNETTE AKERS, who purchased Mirena®. Defendants knew the use for which Mirena® was intended and impliedly warranted the product to be of merchantable quality, safe and fit for the ordinary purposes for which the product is used.

70.     Plaintiff JEANNETTE AKERS reasonably relied on the skill and judgment of Defendants, and as such the implied warranty, in using Mirena®.

71.     Contrary to same, Mirena® was not fit for the ordinary purposes for its intended use, because it is unreasonably dangerous and unfit for the ordinary purpose for which it was used, and hence, defective.

72.     The Mirena® was not fit for the ordinary purposes for which is was intended to be used because it was defectively manufactured and did not conform to the design standards, making the Mirena® IUD unreasonably dangerous and unfit for its ordinary purposes.

73.     The Mirena® was defectively designed in that its design makes it dangerous to an extent beyond the expectations of the ordinary consumer and user with common knowledge of the product's uses and characteristics.

74.     The Mirena® was unreasonably dangerous and unfit for its ordinary purposes because the product labeling failed to adequately warn consumers and prescribers of, among other things, the risk of embedment and migration of the product post-insertion, uterine perforation post-insertion, surgical removal, or the possibility that device complications such as migration and perforation may cause abscesses, infections, require surgery for removal and/or may necessitate hysterectomy, oophorectomy, and other complications.

75.     As a direct and proximate result of one or more of these wrongful acts or omissions of Defendants, Plaintiff JEANNETTE AKERS suffered profound injuries, required and continues to require medical treatment, and incurred and continues to incur medical and hospital expenses.

WHEREFORE, Plaintiff demands judgment against Defendants for compensatory damages, together with interest, costs of suit, attorney's fees and all such other relief as the Court deems appropriate pursuant to the common law and statutory law.

**COUNT VI**
**BREACH OF EXPRESS WARRANTY**

76.     Plaintiff incorporates by reference all other paragraphs of this complaint as if fully set forth, and further alleges as follows:

77.     The aforementioned manufacturing, designing, distributing, marketing, and promoting of Mirena® was expressly warranted to be safe by Defendants for Plaintiff JEANNETTE AKERS and members of the public generally.   At the time of the making of these express warranties, Defendants had knowledge of the foreseeable purposes for which Mirena® was to be used and Defendants warranted Mirena® to be in all respects, safe, effective and fit for the ordinary purposes for which such the product is used.

78.     Mirena® does not conform to these express warranties and representations

because Mirena® is not fit for the ordinary purposes for which such product is used and may produce serious side effects.

79.     As a direct and proximate result of one or more of these wrongful acts or omissions of Defendants, Plaintiff JEANNETTE AKERS suffered profound injuries, required and continues to require medical treatment, and incurred and continues to incur medical and hospital expenses.

WHEREFORE, Plaintiff demands judgment against Defendants for compensatory damages, together with interest, costs of suit, attorney's fees and all such other relief as the Court deems appropriate pursuant to the common law and statutory law.

## PRAYER FOR RELIEF

Plaintiff demands judgment against Defendants for compensatory damages, together with interest, costs of suit, attorneys' fees and all such other relief as the Court deems appropriate pursuant to the common law and statutory law.

Dated this 18<u>th</u>   day of <u>March, 2015.</u>

Respectfully submitted,

<u>/s/ Paula S. Bliss</u>
Paula S. Bliss (BBO# 652361)
BUBALO GOODE SALES & BLISS PLC
60 State Street, Suite 700
Boston, MA 02109
Telephone:  (502) 753-1600
Facsimile:  (502) 753-1601
E-mail: pbliss@bubalolaw.com

AND

s/ Leila H. Watson
Leila H. Watson
Alabama Bar No.:  ASB-3023-S74L
Mitchell G. Allen
Alabama Bar No.:  ASB-6947-A54M
COREY WATSON P.C.
2131 Magnolia Avenue
Birmingham, Alabama  35205
P:  (205) 328-2200
F:  (205) 324-7896
lwatson@cwcd.com
mallen@cwcd.com
***Attorneys for Plaintiff***